## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

**MICHELLE MANCHEGO, individually and as personal representative of THE ESTATE OF JIM MANCHEGO, deceased**

Plaintiff,

v.

**CORECIVIC, INC, a corporation; ROY HILL, in his individual capacity; CATHERINE TEMPEL, in her individual capacity, NATHAN BENNION, in his individual capacity, Ryan Beard, in his individual capacity, NICASIO DOMINGUEZ, in his individual capacity, COLORADO DEPARTMENT OF CORRECTIONS, a governmental entity.**

Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Michelle Manchego, by and through her counsel, RAMOS LAW, pleads the following allegations against Defendants:

### PARTIES, JURISDICTION, VENUE

1. Plaintiff Michelle Manchego is a resident of Colorado and citizen of the United States. She is the biological mother of Jim Manchego who died at Bent County Correctional Facility

2. Defendant Roy Hill is a resident of Colorado and citizen of the United States and was working within the course and scope of his employment as a psychologist with the Bent County Correctional Facility at all times referenced herein.

3. Defendant Nathan Bennion is a resident of Colorado and citizen of the United States and was working within the course and scope of his employment as a medical doctor with the Bent County Correctional Facility at all times referenced herein.

4. Defendant Ryan Beard is a resident of Colorado and citizen of the United States and was working within the course and scope of his employment as a correction officer with the Bent County Correctional Facility at all times referenced herein.

5. Defendant Nicasio Dominguez is a resident of Colorado and citizen of the United States and was working within the course and scope of his employment as a correction officer with the Bent County Correctional Facility at all times referenced herein.

6. Defendant Catherine Tempel is a resident of Colorado and citizen of the United States and was working within the course and scope of her employment as a psychotherapist with the Bent County Correctional Facility at all times referenced herein.

7. Defendant Colorado Department of Corrections ("CDOC") is the public entity responsible for operating the Bent County Correctional Facility. The CDOC is a proper entity to be sued under 42 U.S.C. § 1983.

8. Defendant CoreCivic, Inc. is a Maryland corporation with a principal street address of 5501 Virginia Way, Brentwood, TN 37027 and whose registered agent is C T Corporation System, 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112. Defendant CoreCivic was contracted to perform a state function, operating the BCCF, and is a proper entity to be sued under 42 U.S.C. § 1983.

9. At all times referenced herein, Defendants were acting under the color of state law.

10. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

11. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events and omissions alleged herein occurred within the state of Colorado.

## GENERAL ALLEGATIONS

12. At all times referenced herein, Plaintiff was incarcerated at the Bent County Correctional Facility ("BCCF") beginning in February 2023.

13. In 2011, Mr. Manchego suffered a severe traumatic brain injury as the result of a motor vehicle collision which caused residual psychological, cognitive, and physical limitations.

14. On February 7, 2023, Mr. Manchego underwent a mental health assessment in which he expressed feelings of anxiety and depression.

15. While the therapist evaluating Mr. Manchego believed he would benefit from a psychiatric assessment, Mr. Manchego declined.

16. Mr. Manchego was diagnosed with Chronic Condition – Mental Behavior and Neuro Disorders and Adjustment Disorder.

17. On April 12, 2023, Mr. Manchego underwent a mental health assessment with Dr. Roy Hill in which he expressed feelings of anxiety and depression.

18. Mr. Manchego expressed depression symptoms of sadness, hopelessness, lethargy, low motivation, anhedonia, poor sleep, and decreased appetite. He ranked his depression a 7/8 out of 10.

19. In terms of anxiety, Mr. Manchego expressed symptoms of worry, rumination, tension in the body, fidgeting, pacing, poor sleep, and remote panic attacks. He ranked his anxiety a 7/8 out of 10.

20. Mr. Manchego was reportedly interested in an antidepressant and anxiolytic.

21. Mr. Manchego was diagnosed with Chronic Condition – Mental Behavior and Persistent Depressive Disorder (Dysthymia).

22. On April 28, 2023, Mr. Manchego received an individual psychotherapy session with Robin Runk.

23. Upon information and belief, at some point prior to this visit, Mr. Manchego had been prescribed mental health medications, however, the medical records provided to Plaintiff do not identify the medication.

24. While Mr. Manchego was allegedly scheduled for an appointment with a psychiatrist on May 17, 2023, the medical records provided to Plaintiff do not include a treatment record for that day.

25. Upon information and belief, on September 21, 2023, Dr. Nathan Bennion prescribed Mr. Manchego 200MG tablet, once daily, of Quetiapine for his Persistent Depressive Disorder.

26. Upon information and belief, this was the medication prescribed to Mr. Manchego since April 2023.

27. Upon information and belief, Dr. Bennion stopped prescribing Quetiapine for Mr. Manchego after October 21, 2023.

28. On November 16, 2023, Mr. Manchego was sent to restrictive housing for engaging in sexual misconduct with a fellow inmate in a holding cell.

29. At 11:09 AM, Mr. Manchego received a mental health screening by Catherine Tempel.

30. Mr. Manchego indicated that he had mental health problem he needed to be addressed and requested his Quetiapine prescription be renewed.

31. Ms. Tempel cleared Mr. Manchego for general population with an appropriate referral to mental health services.

32. At 11:30 AM, Mr. Manchego received a pre-restrictive housing assessment by Catherine Tempel.

33. Despite the prior record indicating Mr. Manchego was no longer on psychiatric medications, this assessment states he was currently on medication.

34. Ms. Tempel noted that staff would be required to follow up with Mr. Manchego during restrictive housing mental health rounds.

35. According to an internal investigator's review of the surveillance video from outside of Mr. Manchego's cell, the following events occurred:

    a. 11:29 AM Officer Ryan Beard conducted rounds.

    b. 11:55 AM Officer Beard provided lunch to Mr. Manchego.

    c. 12:06 PM Officer Beard provided a pillow to Mr. Manchego.

    d. 12:28 PM Officer Nicasio Dominguez conducted rounds.

    e. 12:35 PM Officer Beard conducted rounds.

    f. 12:49 PM Officer Beard conducted rounds.

    g. 1:16 PM Officer Beard conducted rounds.

    h. 1:29 PM Dr. Hill conducts restrictive housing individual session with Mr. Manchego.

    i. 1:30 PM Officer Beard conducted rounds.

36. At 2:01 PM, Officer Dominquez found Mr. Manchego in a seated position with his legs in front of him and bedsheet tied around his neck.

37. Mr. Manchego was pronounced dead at 2:29 PM.

38. According to the United States Department of Justice, suicide is the leading cause of death in jails, accounting for 31.1% of jail deaths in 2016. *See* U.S. Dept. of Justice, Office of

Justice Programs, Bureau of Justice Statistics, MORTALITY IN LOCAL JAILS AND STATE PRISONS, 2000 AND 2006-2016 – STATISTICAL TABLES, Feb. 2020.[1]

39. Suicide has been the leading cause of death in local jails each year since 2000, the first year the Department of Justice began collecting data. From 2008 to 2016, the suicide rate in jail facilities increased by more than 30%. From 2000 to 2016, suicide has been a more prevalent cause of death in local jail facilities than heart disease, AIDS-related illness, cancer, liver disease, and respiratory disease.

40. The vast majority of suicides occur in a jail cell, usually when the person is alone and unsupervised. Suicides often involve fabric like a sheet or curtain that are easily used as a ligature.

41. In Colorado between 2010 and 2016, jail suicides accounted for 41% of all in custody deaths.[2]

42. Upon information and belief, Defendants had actual knowledge regarding the risk of suicide in local jail facilities based on their familiarity with the facility; their education, training, and experience; and their participation in a risk pool providing coverage for the specific risk of in-custody suicide at the BCCF.

43. Upon information and belief, Defendants either had actual knowledge regarding the risk of suicide in local jail facilities or they would have known about the risk with adequate training.

**FIRST CLAIM FOR RELIEF**
**Violation of 42 U.S.C. § 1983 – Fourteenth/Eighth Amendment**
**Deliberate Indifference to Medical Care**
(Against Defendant Bennion)

---

[1] *See* https://www.bjs.gov/content/pub/pdf/mlj0016st.pdf (last visited Nov. 01, 2025).
[2] *See* https://www.denverpost.com/2017/01/15/deaths-colorado-jail-double-four-year/ (last visited Nov. 01, 2025).

44. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

45. Plaintiff is a citizen of the United States and all Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

46. Mr. Manchego had a clearly established right under the Fourteenth and Eighth Amendment to be free from deliberate indifference to his medical needs.

47. Defendant Bennion, at all times relevant hereto, was acting under the color of state law.

48. Defendant Bennion knew of the risk of harm to Plaintiff by removing him from his psychiatric medications for his persistent depressive disorder.

49. Defendant Bennion's treatment (or lack thereof) was in reckless disregard to a substantial risk of physical harm to Mr. Manchego.

50. Defendant Bennion is not entitled to qualified immunity.

51. Defendant Bennion is liable to the Plaintiff for violation of 42 U.S.C. § 1983.

52. The acts or omissions of Defendant Bennion as described herein intentionally deprived Mr. Manchego of his constitutional rights and were moving forces and substantially significant contributing proximate causes of his suicide.

53. As a direct result of Defendant Bennion's unlawful conduct, Plaintiff has and will continue to suffer injuries, damages and losses as described herein entitling her to compensatory and special damages including attorneys' fees in amounts to be determined at trial.

54. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

55. Plaintiff is entitled to punitive damages under 42 U.S.C. § 1983, in that the actions of Defendant Bennion were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### SECOND CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 – Fourteenth/Eighth Amendment
### Deliberate Indifference to Medical Care
(Against Defendants Hill, Tempel, Beard, Dominguez)

56. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

57. Plaintiff is a citizen of the United States and all Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

58. Mr. Manchego had a clearly established right under the Fourteenth and Eighth Amendment to be free from deliberate indifference to his medical needs.

59. Defendants, at all times relevant hereto, were acting under the color of state law.

60. Defendants knew of the risk of harm to Plaintiff by not performing meaningful observations ever 15-minutes for an individual with persistent depressive disorder and whose psychiatric medication was recently discontinued.

61. Defendants' treatment (or lack thereof) was in reckless disregard to a substantial risk of physical harm to Mr. Manchego.

62. Defendants are not entitled to qualified immunity.

63. Defendants are liable to the Plaintiff for violation of 42 U.S.C. § 1983.

64. The acts or omissions of Defendants as described herein intentionally deprived Mr. Manchego of his constitutional rights and were moving forces and substantially significant contributing proximate causes of his suicide.

65. As a direct result of Defendants' unlawful conduct, Plaintiff has and will continue to suffer injuries, damages and losses as described herein entitling her to compensatory and special damages including attorneys' fees in amounts to be determined at trial.

66. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

67. Plaintiff is entitled to punitive damages under 42 U.S.C. § 1983, in that the actions of Defendants were taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### THIRD CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983 – Fourteenth/Eighth Amendment
### Deliberate Indifference to Medical Care
(Against CoreCivic and CDOC)

68. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

69. Defendants are persons within the meaning of 42 U.S.C. § 1983.

70. Defendants, at all times relevant to this claim, were acting under the color of state law and had a non-delegable duty to provide constitutionally adequate protection of inmates.

71. Defendants' deliberately indifferent policies, customs, and practices as described herein were moving forces and proximate causes of the violation of Plaintiff's constitutional rights.

72. Denver County Defendants had a policy, custom, or practice of failing to provide adequate medical care. In furtherance of this policy, custom, or practice,

73. The acts and omissions of individual Defendants were engaged in pursuant to the custom, policy, and practice of Defendants CoreCivic and CDOC, which encourages, condones, tolerates, and ratifies the constitutional violations described herein.

74. Defendants were deliberately indifferent to an obvious risk of serious harm by failing to provide adequate medical care to prisoners. This was without necessity, right, legal justification, or excuse and with such conscious or callous indifference to the rights of the Plaintiff as to rise to a level repugnant to the conscience of a reasonable person.

75. Defendants failed to properly train and supervise their employees to provide necessary medical care at BCCF.

76. Defendants knew or should have known that their failure to train and supervise their employees would cause such employees to fail to provide necessary medical needs, in violation of detainee's constitutional rights.

77. Defendants' failure to train and supervise their employees was a moving force and proximate cause of the violation of Mr. Manchego's constitutional rights.

78. Defendants were willful participants in a joint activity.

79. Defendant CoreCivic contracted with the state of Colorado to perform the state function of operating the BCCF.

80. The policies, customs, and practices of Defendants as described herein deprived Mr. Manchego of his rights, privileges, liberties, and immunities secured by the United States Constitution, and caused Plaintiffs other damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against each of the Defendants, and award her all relief allowed by law, including but not limited to the following:

      (a) All appropriate relief at law and equity;

      (b) Declaratory relief and other appropriate equitable relief;

      (c) Economic losses on all claims as allowed by law;

(d) Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f) Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g) Pre- and post-judgment interest at the appropriate lawful rate; and

(h) Any further relief that this court deems just and proper, and any other relief as allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 14th day of November 2025.

                              **RAMOS LAW**

                              */s/ Jessica L. McBryant*
                              Jessica L. McBryant, #51318
                              10190 Bannock Street, Suite 200
                              Northglenn, CO 80260
                              Phone: (303) 733-6353
                              Fax: (303) 865-5666
                              Email: jlmcbryant@ramoslaw.com